| Minute Order Form (06/97) | | | | |
|---|---|---|---|---|
| \[signature\] | United States District Court, Northern District of Illinois | | | |
| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | | |
| CASE NUMBER | 01 C 7436 | DATE | 1/30/2003 | |
| CASE TITLE | Jankovich vs. Exelon Corp et al | | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We grant defendant's motion (Doc 17-1) for summary judgment in its entirety. All pending motions are rendered moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 31 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 34 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



MONA JANKOVICH,)
)
Plaintiff,)
)
vs.)  01 C 7436
)
EXELON CORPORATION, a Pennsylvania)
corporation; and COMMONWEALTH EDISON)
CO., an Illinois corporation,)
)
Defendants.)

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter is before the court on Defendants Exelon Corporation and Commonwealth Edison Co.'s (collectively referred to as "ComEd") motion for summary judgment on Plaintiff Mona Jankovich's ("Jankovich") age discrimination claim and on her ERISA claim. For the reasons stated below we grant the motion.

## BACKGROUND

Plaintiff Mona Jankovich ("Jankovich") began working for ComEd in 1971. In 1993 she became a customer facilities engineer ("CFE") which required her to serve as the interface between ComEd's customers. The position also involved engineering projects and arranging work orders, permits, contracts, cost estimates and other details

necessary for construction. In 1998 Jankovich transferred to the University Park office and Lee Hahs ("Hahs") was her immediate supervisor. In 1999 Hahs began to receive complaints from other ComEd employees regarding Jankovich's work performance. In December 1999 Hahs met with Jankovich to discuss her end of the year evaluation and Hahs informed her that she would be given a "B" rating which meant that she was meeting expectations. In January of 2000 ComEd decided to order reevaluations for all management employees under a heightened performance standard. ComEd ordered the reevaluation because there were many service interruptions in the summer of 1999 and there were too many high year end performance rating scores submitted in light of the clear deficiencies in performance for 1999. Hahs' supervisor, John Jamicich ("Jamicich"), told Hahs to reevaluate his subordinates. Hahs decided that, under the heightened performance standard, Jankovich should receive a "C" rating because of the complaints he received indicating deficiencies in her work performance. As a result of the "C" rating, Jankovich was given a Performance Improvement Action Plan ("PIAP").

After the first half of 2000, Hahs recommended that Jankovich receive a two percent raise because she was complying with the PIAP. However, in the second half of 2000 Hahs again began receiving complaints regarding Jankovich's work performance. In October 2000, Hahs left Jankovich's department and Francisco Perez

("Perez") became her immediate supervisor. Perez also received complaints regarding Jankovich's performance and, on that basis and based on input from Hahs, he gave her a "C" rating for her performance in 2000. On February 6, 2001, ComEd informed Jankovich that she was terminated pursuant to an established ComEd policy which provides that employees who received two consecutive "C" performance ratings are subject to termination. Jankovich was 49 years old when terminated. Her complaint includes a claim alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and a claim alleging that ComEd terminated her employment to prevent her from receiving pension and severance benefits in violation of the Employment Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA § 510").

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.,* 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences that favor the non-moving party. *Anderson,* 477 U.S. at 255; *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. ADEA Claim

The courts are not intended to serve as a "super-personnel department" that evaluates each and every decision made by an employer and determines whether the

-4-

decisions were prudent and fair. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997). The courts are empowered to determine whether an employer's conduct violates the law. *Id.* Thus, in the case before us we must focus on the issue of whether ComEd discriminated against Jankovich because of her age. It is not within our purview to decide whether, as a general matter, Jankovich was treated unjustly.

The ADEA precludes employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). In an ADEA case an employee can defeat a summary judgment motion utilizing the direct method of proof or by utilizing the indirect burden-shifting approach defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973). *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002). Jankovich does not have sufficient evidence to proceed under the direct method of proof and thus must turn to the indirect method. To defeat a motion for summary judgment in an ADEA case under the indirect approach the plaintiff must first establish a *prima facie* case by showing that: 1) he is a member of a protected class, 2) he was meeting his employer's legitimate work related expectations, 3) he "was subject to an adverse employment action," and 4) he was treated differently than similarly situated employees outside the protected class.

*Krchnavy*, 294 F.3d at 875. If a plaintiff establishes a *prima facie* case, then the burden shifts to the employer to provide a "legitimate nondiscriminatory reason" for the adverse employment action. *Id.* at 876. If such a reason is supplied, then the employee must show that the reason is merely a pretext for unlawful discrimination. *Id.*

Jankovich has not shown that she met ComEd's legitimate work related expectations. There were complaints from coworkers and internal customers in 1999 and in 2000 indicating that her work was incomplete and inadequate. Neither has Jankovich shown that a similarly situated employee outside the protected class was treated differently. Jankovich claims that she was similarly situated with Anka Knezevic ("Knezevic") because they had similar job assignments. However, Jankovich has not shown that there were complaints about Knezevic's work performance as there were regarding Jankovich's work performance. Knezevic is not similarly situated merely because she has a similar or identical job description. ComEd claims as its non-discriminatory reason for firing Jankovich that Jankovich was fired because of poor work performance.

To show a pretext, the plaintiff must establish that the given reason is a lie made by the employer to conceal its unlawful discriminatory intentions. *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1045 (7th Cir. 2000). A plaintiff can show a pretext by presenting "direct evidence that a discriminatory reason

motivated the employer's decision or by presenting evidence that the employer's proffered reason is unworthy of credence, thus raising the inference that the real reason is discriminatory." *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997).

Jankovich first argues that the fact that she was initially told that she would receive a "B" rating and then, after the reevaluation, had the rating changed to a "C" rating is evidence of pretext. First of all, Jankovich offers no explanation as to why ComEd would wait until the reevaluation before it discriminated against her. If ComEd were going to unlawfully discriminate, then there is no logical reason why Jankovich would not have received a "C" rating to begin with. Changing the "B" rating to a "C" rating only drew more attention to the decision which ComEd would want to avoid if it was unlawfully discriminating. Jankovich claims that ComEd used the reevaluation as a cover to set quotas and force out older workers. She claims that during the reevaluation, ComEd pressured supervisors to artificially lower ratings so that they did not realistically reflect the actual work performances of the employees in order to meet the quotas. However, these claims are contrary to Jankovich's own admissions. Jankovich admits in her 56.1(b) responses that ComEd experienced performance problems in 1999 and that there were deficiencies in its service during the summer of 1999. She also admits that ComEd ordered the 1999 year end reevaluations

because the ratings were too high based on the clear deficiencies in performance. She admits that ComEd decided to heighten the performance standards for the reevaluations so that the performance deficiencies in 1999 would be reflected in the ratings. Jankovich does not dispute that ComEd's intention in ordering the reevaluations was to have the supervisors reevaluate the employees to "more realistically reflect[] what the company believed had been a disappointing performance for the year." She also admits that "[t]he goal of th[e] reevaluation was to improve the company's performance by holding employees accountable for their own performance." It is also undisputed that ComEd ordered reevaluations for all management employees, not only for the older employees.

Another argument presented by Jankovich regarding pretext involves allegations that Jamicich told Robert Switak ("Switak"), the Joliet CDC superintendent, to alter his performance reviews to reflect one or two "C" ratings for 1999. Switak allegedly refused and Switak eventually received a "C" rating for his own performance. Even if we accept the fact that Switak was so ordered, there is no evidence offered other than Switak's personal opinion to show that Switak's own rating was lowered as a result of his refusal to alter his performance reviews for 1999. Also, Switak was not a decision maker involved in Jankovich's 1999 or 2000 performance ratings or in the decision to terminate her. This evidence regarding Switak is not sufficient for us to reasonably

infer, as Jankovich suggests, that Jamicich pressured Hahs in 1999 and Perez in 2000 to alter Jankovich's rating in order to meet quotas and discriminate against her because of her age. Hahs states in his deposition that no one told him that he had to give a certain number of "C" ratings.

Jankovich tries to portray the reevaluations as an attempt by ComEd to artificially set quotas for low ratings and thus create performance ratings that do not accurately reflect the employee's performance. Even if we accept that ComEd used the reevaluations to set artificial quotas, which Jankovich's own admissions contradict, Jankovich still has not offered any proof to connect the practice to an intent to discriminate on the basis of age.

The only piece of evidence that Jankovich offers that even hints at possible age discrimination is the alleged conversations that she had with Hahs during her employment at ComEd. According to Jankovich, she was talking with Hahs and he said that he hoped that he could stay with ComEd for as long as possible, but that he had concerns because people were being phased out and that departments with demographics of older employees were being reduced in size. Jankovich states that the conversation was not related to any particular employee's age or status and that it was only general conversation. She does not recall any specific reference to anyone's age. She recalls that they also discussed why an employee could get better pension benefits

at age fifty-five. Evidence of such idle "chit-chat" is wholly insufficient to show that in 1999 and 2000 the specific decision makers involved in formulating Jankovich's year end performance ratings had an intent to discriminate on the basis of her age or that their reasons given for the "C" performance ratings were lies. Jankovich's descriptions of her conversations with Hahs do not in any way directly link Hahs' general concerns mentioned in their conversations about his future at ComEd to the decision to give Jankovich "C" performance ratings in 1999 and 2000.

Jankovich has not provided evidence to show that her supervisors' reasons for giving her poor ratings are not credible. She admits that Hahs received complaints in 1999 regarding Jankovich's work performance from Jankovich's coworkers Osmond Hooks ("Hooks") and Melanie Perkins ("Perkins'), indicating that Jankovich's work was incomplete. Jankovich also admits that Hahs received a complaint in 1999 regarding her work performance from Ron Unruh, the Overhead Construction Foreman. Neither does Jankovich deny that in 2000 Hahs received complaints from Perkins and Hooks indicating that Jankovich was on vacation and she left work that was incomplete. Jankovich also admits that, after Hahs received the complaints about Jankovich's performance, he talked to Knezevic who was covering for Jankovich in her absence, and that Knezevic indicated that Jankovich's work was not in the proper order. Jankovich also admits that, while she was on vacation a second time, Perez

received a complaint about Jankovich's work from a customer of the Lagestee-Mulder project.

We note that some of the above 56.1 admissions are presumed and that Jankovich stated "disputed" in response to several of the above allegations. However, her denials were evasive and unsupported. *See Renaldi v. Sears Roebuck and Co.*, 2001 WL 290374, *2 (N.D. Ill. 2001) (stating that unsupported and evasive 56.1(b) denials are deemed admitted). When asked if there were complaints about her work performance, Jankovich denies the fact, but supports it with citations and additional statements that indicate that Hahs did not remember the complaints or that other employees were complained about as well.

Jankovich argues that the complaints against her were unfounded and she speculates that her co-workers complained while she was on vacation because they were "resentful" that she had taken a vacation. She also points out that other CFEs were the subject of complaints. However, these arguments are insufficient to cast doubt on ComEd's legitimate non-discriminatory reason for giving her poor ratings and terminating her. In determining whether the reason given by an employer was a pretext, the relevant inquiry is whether the employer lied, not whether the employer's ultimate decision proved to be a sound one. *Essex*, 111 F.3d at 1310.

Jankovich admits that Hahs and Perez gave her the "C" year end performance ratings in 1999 and 2000. Inexplicably she also acknowledges that Hahs and Perez did not have a bias against her because of her age. Her only explanation for her continued opposition to the summary judgment in light of these apparently fatal admissions is that ComEd allegedly pressured its supervisors to artificially meet performance ratings quotas in order to discriminate on the basis of age. This theory is unsupported and it contradicts Jankovich's own admissions. We shall conclude with Jankovich's own words stated during her deposition and let them speak for themselves. When asked: "Do you have any reason to believe that Lee Hahs gave you or recommended that you receive a C rating for the year 2000 because of your age?" Jankovich responded: "No." When asked: "Do you have any reason to believe that Lee Hahs was biased against anyone at the company because of his or her age?" Jankovich responded: "No." When asked: "What about Frank Perez? Any reason to believe Frank Perez had any age bias?" Jankovich responded: "No." When asked: "Do you know whether anyone directed Lee Hahs to recommend that you receive a C rating for the calender year 2000?" Jankovich answered: "No." Jankovich has not shown ComEd's legitimate non-discriminatory reason to be a pretext, and therefore we grant the motion for summary judgment on the ADEA claim.

## II. ERISA Claim

Jankovich claims that ComEd terminated her employment in order to deny her pension benefits. ERISA § 510 states that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 1140. To establish a *prima facie* case of discrimination under ERISA § 510, a plaintiff must show that "she (1) belongs to the protected class; (2) was qualified for the position involved; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent was present." *Little v. Cox's Supermarkets*, 71 F.3d 637, 642 (7th Cir. 1995). Jankovich devotes only three sentences in her answer to supporting the ERISA claim, and her argument consists solely of generalized and conclusory statements. She states that she "has presented evidence showing that she was discharged under circumstances that provide some basis for believing that [there was] the specific intent to interfere with her ERISA rights" She does not provide any elaboration regarding the supposed evidence supporting her ERISA claim other than indicating that "she and Lee Hahs discussed ages, pensions, and the effect on age on pension benefits." This vague explanation is insufficient to show circumstances sufficient to indicate the intent required for an ERISA § 510 claim.

In fact the vague statement in her answer is deceptive and misleading. She would apparently have this court speculate that her discussion with Hahs either directly or indirectly involved her pension and age, and that Hahs somehow indicated that she might be or would be forced out because of her age before she could receive pension benefits.

According to Jankovich, Hahs speculated in a general manner about his own future at ComEd, not Jankovich's future at ComEd. Jankovich admits that it was only general conversation and she does not claim that Hahs leveled any hard accusations at ComEd. She admits that Hahs never made any specific reference to any employee's age. Jankovich also claims that she and Hahs discussed the advantages of receiving pension benefits at age fifty-five, but nowhere in Jankovich's deposition does she indicate that the discussion also addressed an intent by ComEd to prevent workers from receiving the benefits attained by age fifty-five. In summation, Jankovich has not provided evidence that would indicate that ComEd terminated her in order to deny her benefits in violation of ERISA § 510. Therefore, we grant the motion for summary judgment on the ERISA claim.

## CONCLUSION

Based on the foregoing analysis, we grant the motion for summary judgment in its entirety. All pending motions are rendered moot.

*(signature)*

Charles P. Kocoras
Chief Judge
United States District Court

Dated: JAN 3 0 2003